**S.D., Individually and as Guardian Ad Litem of J.G., Plaintiff,**

v.

**MANVILLE BOARD OF EDUCATION, Defendant.**

**No. CivA. 97–1595 MLP.**

United States District Court, D. New Jersey.

Jan. 7, 1998.

---

**7.** For a discussion of *MCI,* see *supra* Section III(A)(2).

Theodore A. Sussan, Sussan & Greenwald, Spotswood, NJ, for Plaintiff.

Megan Seel, Trombadore, Seel & Trombadore, Somerville, NJ, for Defendant.

## MEMORANDUM OPINION

PARELL, District Judge.

This matter comes before the Court on cross-motions for summary judgment by plaintiff S.D. and defendant Manville Board of Education ("Manville" or the "district"). For the reasons stated in this Memorandum Opinion, plaintiff's motion for summary judgment is denied without prejudice and defendant's motion for summary judgment is denied without prejudice.

### BACKGROUND

Plaintiff S.D. is the mother of J.G., a sixteen-year-old boy who was first classified as neurologically impaired in July, 1987. (Aff. of S.D. ¶¶ 2, 5; Aff. of Walter A. Oberwanowicz, Director of Special Services, Manville Board of Education [hereinafter "Oberwanowicz Aff."], ¶ 3.) J.G. attended first through fourth grades in a self-contained program in the district. (S.D. Aff. ¶ 5.) In September, 1991, S.D. transferred her son to the Temple Christian School, where he repeated third and fourth grades. (*Id.*) J.G. returned to Manville in September, 1993, and was placed in a self-contained class for perceptually impaired children as a sixth grade student. (*Id.*) The following year, J.G. was placed in a resource center program at Manville High School. (*Id.*) This placement was continued through the 1995–96 academic year. (*Id.*)

In September of 1995, S.D. obtained a letter from one of J.G.'s treating psychologists, Frank C. Calandra, Psy.D. Dr. Calandra recommended that S.D. consider residential placement for J.G. (S.D. Aff., Ex. B: Letter from Dr. Frank C. Calandra, Psy.D., to S.D. (Sept. 6, 1995).) S.D. also obtained a letter from J.G.'s physician, Dr. Joseph M.

Rochford, who opined that J.G. "should be seen by DYFS and placed in a Residential School Program." (S.D. Aff., Ex. C: Letter from Dr. Joseph M. Rochford to "Whom It May Concern" (Sept. 13, 1995).) S.D. forwarded these letters to defendant's child-study team. (S.D.Aff.¶ 6.)

An Individualized Education Program ("IEP") conference was held on June 18, 1996. (S.D.Aff., Ex. G.) The IEP called for an in-district placement with resource center support in English, math, history, and science. (*Id.*) In July, 1996, S.D. advised defendant that she felt that J.G. needed "out of district placement" and requested mediation. (S.D. Aff., Ex. I: Letter from S.D. to Director of Special Education (July 15, 1996).) The mediation was adjourned to allow defendant's child-study team to complete its evaluations of J.G. (Oberwanowicz Aff. ¶ 12.) Subsequently, on October 22, 1996, another IEP conference was held. The IEP, which called for out-of-district placement, contained the following explanation: "[a]t this time [J.G.'s] school setting needs to be highly structured and to provide a consistent behaviorally based management program. He also needs alternative teaching methods and materials. These services can best be provided in a special education school." (Oberwanowicz Aff., Ex. B: IEP dated Oct. 22, 1996.)

S.D. retained the law firm of Sussan & Greenwald in December, 1996. By letter dated December 4, 1996, Mr. Theodore A. Sussan advised Mr. Oberwanowicz that "[a]fter reviewing pertinent documents, it appears to me, without question, that the appropriate placement for [J.G.] in the least restrictive environment is residential in nature. Therefore, please accept this letter as a request that [J.G.] be placed in an appropriate residential facility ...." (S.D. Aff., Ex. W: Letter from Mr. Sussan to Mr. Oberwanowicz (Dec. 4, 1996).) The district's attorney, Ms. Megan C. Seel, responded to Mr. Sussan's letter as follows:

> I represent the Manville Board of Education. The Board has provided me with copies of your December 4 correspondence concerning [J.G.'s] placement. I will presume that you [sic] letter is meant to trigger the 30–day time limit under R. 6:28–2.7 for purposes of obtaining a due process hearing. It may be that this matter cannot be resolved outside of a due process hearing. However, it is the Board's desire to work with you and [J.G.'s] parents to find an appropriate solution to his educational requirements.
>
> We will attempt to provide you with [J.G.'s] file prior to the Christmas vacation. Alice Kelly, the case manager, had arranged for intake interviews for [J.G.] at UMDNJ and at the Montgomery Academy for Wednesday or Thursday of last week. Mrs. [D.] did not bring [J.G.], nor did she attend these intake meetings. When the social worker called to find out why they had not attended, Mrs. [D.] said that all communication should go through her attorney. Would you please speak with her concerning these intake interviews. Perhaps they can be rescheduled with her cooperation.

(Aff. of Megan C. Seel, Attorney for Defendant [hereinafter "Seel Aff."], Ex. B: Letter from Ms. Seel to Mr. Sussan (Dec. 9, 1996).)

Ms. Seel communicated with Mr. Sussan again on December 20, 1996. This letter states in part: "I understand that Mrs. [D.] has made independent explorations of alternative placements for [J.G.]. Will you please provide me with copies of any materials she has received from those schools or institutions." (Seel Aff., Ex. C: Letter from Ms. Seel to Mr. Sussan (Dec. 20, 1996).) Ms. Seel made a similar request on January 16, 1997. (*See* Seel Aff., Ex. F: Letter from Ms. Seel to Mr. Sussan (Jan. 16, 1997) ("Please provide me with copies of all materials involving placements that your client feels would offer free appropriate public education for J.G. and the reasons why.").) It appears that the requested materials were never provided. (Oberwanowicz Aff. ¶ 21.)

S.D. filed a petition for due process on January 9, 1997. (S.D. Aff., Ex. Z: Petition for Due Process.) A trial was scheduled for January 21, 1997. (S.D. Aff. ¶ 23; Oberwanowicz Aff. ¶ 23.) On the trial date, the parties entered into a temporary settlement agreement. Manville agreed to withdraw its application to place J.G. on home instruction. (Oberwanowicz Aff., Ex. C: Special Edu-

cation Settlement.) S.D. agreed to: (1) provide authorizations for the release of information regarding J.G. from various doctors and institutions; (2) obtain a prescription allowing the district to administer medication to J.G.; (3) allow J.G. to attend an intake interview at the CPC Behavioral Center; and (4) allow J.G. to be seen by the district's consulting psychiatrist. (*Id.*)

During this time, S.D. filed an application on behalf of J.G. with The Pathway School ("Pathway") in Pennsylvania. (S.D.Aff.¶ 26.) Defendant learned of the application and offered to accompany S.D. to review the facility; S.D. declined this offer. (Oberwanowicz Aff. ¶ 25.) S.D. was informed by letter dated January 30, 1997 that J.G. had been accepted into a residential program at Pathway. (S.D. Aff., Ex. CC: Letter from Louise Frederick, M.Ed., Admissions Director, The Pathway School, to Mr. and Mrs. [D.] (Jan. 30, 1997).) Mr. Sussan advised defendant of the acceptance by letter dated February 3, 1997. (S.D. Aff., Ex. FF: Letter from Mr. Sussan to Ms. Seel (Feb. 3, 1997).) On the same date, Mr. Sussan also requested a mediation date from the Department of Education. (S.D. Aff., Ex. DD: Letter from Mr. Sussan to Catherine M. Thomas, Ph.D., Mediator (Feb. 3, 1997).)

On February 4, 1997, the Board received the report of Dr. Albert M. Bromberg, who diagnosed J.G. as suffering from Asperger's Disorder. (Oberwanowicz Aff., Ex. D: Report of Dr. Bromberg dated Feb. 1, 1997.) Dr. Bromberg opined that in considering an appropriate educational placement for J.G., the following must be addressed: "the danger [J.G.] may present to himself or others because of his behavior. Also, can [J.G.'s] aggressive and destructive behavior be controlled by therapy and medication. In addition, will therapy also permit him to achieve maximal benefit from the educational process." (*Id.*)

On February 7, 1997, Ms. Seel forwarded a copy of Dr. Bromberg's report to Sussan & Greenwald. (Seel Aff., Ex. I: Letter from Ms. Seel to Ms. Staci Greenwald (Feb. 7, 1997).) Ms. Seel advised plaintiff's counsel that "Manville will talk to Pathway School to obtain more information on the program and its appropriateness as a placement for [J.G.]." (*Id.*) The district visited the facility and determined that it would be an appropriate placement for J.G. (Oberwanowicz Aff. ¶ 30.) J.G.'s proposed placement at Pathway was presented to the Board on February 18, 1997. (*Id.* ¶ 31.) On February 21, 1997, the date scheduled for mediation, the parties agreed that J.G. would be placed in a residential program at Pathway. (S.D. Aff., Ex. II; Oberwanowicz Aff., Ex. E: Notice of Agreement dated Feb. 21, 1997.)

Plaintiff commenced this action for attorneys' fees on March 26, 1997. Plaintiff now moves for summary judgment, seeking an award of attorneys' fees and costs in the amount of $17,891.10. S.D. argues that she is entitled to fees because her lawsuit forced the district to change its position on the appropriateness of residential placement for J.G. (Pl.'s Br. in Supp. of Mot. for Summ. J. at 9.) Manville contends that plaintiff "impeded rather than facilitated defendant's efforts to find an appropriate out-of-district placement for J.G. That the child was placed at Pathway[ ] was not a result of plaintiff's threatened lawsuit, but rather a convergence of defendant's expert's diagnosis of the child's problem as Asperger's Syndrome and the Pathway[ ] School's ability to treat that problem." (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Mot. for Summ. J. at 6 ("Def.'s Br. in Opp'n").)

### DISCUSSION

A court shall enter summary judgment when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this initial burden, the opposing party must establish that a genuine issue of material fact exists. *Jersey Cent. Power & Light Co. v. Township of Lacey,* 772 F.2d 1103, 1109 (3d Cir.1985), *cert. denied,* 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). The opposing party cannot rest on mere allegations; rather, it must present actual evidence that creates a genuine issue

of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quotation omitted); *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990). Issues of fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

■ Plaintiff seeks attorneys' fees and disbursements (including out of pocket expenses and expert fees)[1] under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(e)(4). This statute provides in relevant part:

> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party.

20 U.S.C. § 1415(e)(4)(B). Thus, by its terms, § 1415(e)(4) requires that the plaintiff be the "prevailing party" to recover attorneys' fees. *See E.M. v. Millville Bd. of Educ.*, 849 F.Supp. 312, 316 (D.N.J.1994) ("To recover attorney's fees and costs under the IDEA, a parent must show that she is a prevailing party."); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("A plaintiff must be a prevailing party' to recover an attorney's fee award under [42 U.S.C.] § 1988.").

However, a prevailing party's right to attorney's fees is not absolute. Section 1415(e)(4)(F) states that:

> Whenever the court finds that—
>
> (i) the parent or guardian, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;
>
> (ii) the amount of the attorney's fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing

in the community for similar services by attorneys of reasonably comparable skill, experience, and reputation; or

> (iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding, the court shall reduce accordingly the amount of the attorney's fees awarded under this subsection.

20 U.S.C. § 1415(e)(4)(F); *see Johnson v. Bismarck Public Sch. Dist.*, 949 F.2d 1000, 1003 (8th Cir.1991) ("Congress recognized when it mandated reduced fees for a parent who unreasonably protracted the final resolution [that] needless litigation frustrates the [Act's] objectives by fostering delay, exacerbating ill-will among parties who should cooperate in educating the handicapped child, and wasting the resources of all concerned.").

■ Thus, this Court's task is two-fold. First, we must decide the issue of whether S.D. is a prevailing party. If we find that S.D. so qualifies, we must then determine the amount of reasonable fees and costs, if any, owed by the district.

■ The test to determine prevailing party status is well established in this Circuit. *Hughes v. Lipscher*, 852 F.Supp. 293, 301 (D.N.J.1994) (citing *Metropolitan Pittsburgh Crusade for Voters v. Pittsburgh*, 964 F.2d 244, 250 (3d Cir.1992)). The test, which is essentially a two-part inquiry, requires a court to determine whether: (1) the plaintiff achieved some of the benefit sought by the lawsuit; and (2) "the litigation constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief." *Metropolitan Pittsburgh Crusade*, 964 F.2d at 250 (quoting *Dunn v. United States*, 842 F.2d 1420, 1433 (3d Cir. 1988)).

■ In determining whether a party has met the first prong of the prevailing party test, a court should compare the relief the

---

1. Expert fees are recoverable as part of costs under IDEA. *See Arons v. New Jersey State Bd. of Educ.*, 842 F.2d 58, 62 (3d Cir.), *cert. denied*, 488 U.S. 942, 109 S.Ct. 366, 102 L.Ed.2d 356 (1988); *Field v. Haddonfield Bd. of Educ.*, 769 F.Supp. 1313, 1323 (D.N.J.1991). Nonetheless, such fees must be properly documented and must also be reasonable under the circumstances. *See Vergi-*

*nia McC v. Corrigan–Camden Indep. Sch. Dist.*, 909 F.Supp. 1023, 1033 (E.D.Tex.1995); *Bailey v. District of Columbia*, 839 F.Supp. 888, 892 (D.D.C.1993); *Kattan v. District of Columbia*, No. 88–0630, 1991 WL 222312, at * 3 (D.D.C. October 17, 1991), *aff'd*, 995 F.2d 274 (D.C.Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 71 (1994).

plaintiff sought from the lawsuit with the relief eventually obtained. *Hughes,* 852 F.Supp. at 301–02 (citing *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 911 (3d Cir.1985)). "Plaintiffs will be prevailing parties even though the relief they obtained is not identical to the relief they specifically demanded, as long as the relief obtained is of the same general type." *Institutionalized Juveniles,* 758 F.2d at 912. It is well settled that relief need not be judicially decreed to justify a fee award. *See Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987); *E.M.,* 849 F.Supp. at 314 (citations omitted) ("Most courts, including those in this district, permit parents who prevail through settlement to recover attorneys fees, even if an administrative hearing was never held.").

Here, plaintiff sought residential placement for her son. On February 21, 1997, the parties entered into a settlement agreement providing that J.G. was to be enrolled in a residential program. Accordingly, the Court finds that plaintiff achieved the benefit sought from the lawsuit, and thus satisfies the first prong of the prevailing party test.

▮ The Court therefore turns to the second prong of the prevailing party test, that of causation. The standard in the Third Circuit requires the Court to determine "whether the litigation constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief." *Metropolitan Pittsburgh Crusade,* 964 F.2d at 250 (quoting *Dunn,* 842 F.2d at 1433). While there must be some causal relationship between the lawsuit and the relief obtained, "the plaintiff's lawsuit need not be the sole cause of defendant's action." *Id.* Further, the district court must apply the most expansive definition of causation. *Hughes,* 852 F.Supp. at 304 (citing *Dunn,* 842 F.2d at 1433).

▮ Causation may be established under the "catalyst theory," under which "a plaintiff who can prove that the existence of the lawsuit accomplished the original objectives of the lawsuit without a formal judgment can be a prevailing party.'" *Baumgartner v. Harrisburg Hous. Auth.,* 21 F.3d 541, 544 (3d Cir.1994). The classic situation for applica-

tion of the catalyst theory is where the defendants voluntarily change their behavior to eliminate the challenged conduct. *Id.* (citation omitted).

Here, the parties settled their dispute before a trial was held before the Office of Administrative Law; thus, plaintiff cannot show that a favorable judgment was the cause of the relief obtained. Rather, S.D. must rely on the catalyst theory to show causation. In order to demonstrate that she is a prevailing party under this theory, plaintiff must "prove that the existence of the lawsuit accomplished the original objectives of the lawsuit." *Baumgartner,* 21 F.3d at 544 (emphasis added); *see also Craig v. Gregg Cty.,* 988 F.2d 18, 21 (5th Cir.1993) (finding that plaintiff "has not shown that his suit caused Gregg County to remedy the allegedly flawed voting scheme").

The Court finds that plaintiff has met this burden. The record shows that the school district placed J.G. in a residential program only after S.D. filed her petition for due process. It also reveals that plaintiff first requested residential placement from the district in 1995. (S.D.Aff.¶ 8.) She reiterated her position several times between 1995 and February 21, 1997, the date the district agreed to place J.G. at the Pathway School. (*Id.,* Ex. II (settlement agreement); *id.* ¶ 8.) Despite her continuous requests, the school district did not agree to residential placement. (*Id.,* Ex. AA (Aff. of Alice Kelly (January 15, 1997)).) For example, on June 18, 1996, the Manville child-study team reviewed J.G.'s case and recommended continued placement in the resource center at the Manville High School. (*Id.,* Ex. G.) In addition, the IEP dated October 22, 1996 recommended an out-of-district day placement for J.G., but the district did not specifically agree to residential placement. (*See id.* ¶ 17). Thus, the record reveals that the institution of this litigation in all likelihood had some catalyst effect in causing the district to alter its position. We therefore find that S.D.'s institution of due process proceedings constituted a material contributing factor in the district's agreement to place J.G. residentially.

■ Because the Court has determined that S.D. is a prevailing party, the Court turns to its second task, which is to calculate the amount of reasonable fees and costs owed by the district. In determining the amount of reasonable fees, the Supreme Court has held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (claim arising in context of 42 U.S.C. § 1988)[2]; *see also Rode v. Dellarciprete,* 892 F.2d 1177 (3d Cir.1990). The result of this computation is called the lodestar. The lodestar is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992); *see also Rode,* 892 F.2d at 1183. The party seeking a fee award must submit evidence to support both the hours worked and the rate claimed. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. "Where the documentation is inadequate, the district court may reduce the award accordingly." *Id.* Furthermore, the district court should exclude from the initial fee calculation hours that were not "reasonably expended." *Id.* at 434, 103 S.Ct. at 1939 (quotation omitted). The attorney for the prevailing party should make "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.; see also Massachusetts Dept. of Public Health,* 841 F.Supp. at 458.

■ It is the general rule that a reasonable hourly rate is calculated according to the prevailing market rates in the community. *Blum v. Stenson,* 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547–48 n. 11, 79 L.Ed.2d 891, (1984); *Student Public Interest Research Group, Inc. v. AT & T Bell Laboratories,* 842 F.2d 1436, 1448 (3d Cir.1988) (hereinafter *"PIRG"*); *Washington v. Philadelphia County Court of Common Pleas,* 89 F.3d 1031, 1035 (3d Cir.1996). The prevailing party bears the burden of establishing by way of satisfactory evidence, " 'in addition to [the] attorney's own affidavits,' that the requested hourly rates meet this standard." *Washington,* 89 F.3d at 1035 (quoting *Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11). The Court of Appeals has further explained that the prevailing party has the burden of demonstrating " 'the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity,' " *Washington,* 89 F.3d at 1036 (quoting *PIRG,* 842 F.2d at 1450). This burden is normally addressed by submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience. *See id.*

Here, defendant opposes the application for counsel fees, and we find that as to the hourly rates and hours claimed, plaintiff has not carried her burden. In support of plaintiff's application, she has submitted only counsels' own affidavits regarding hourly rates and hours expended. (*See* Pl.'s Br. in Supp. of Summ. J., Exs. 1(a) (Aff. of Theodore Sussan), 1(b) (Aff. of Staci Greenwald).) Furthermore, those affidavits make no representations whatsoever as to the prevailing rates charged by attorneys with similar skill and experience in the community. In the absence of such evidence the Court is left to mere speculation as to what billing rates might be appropriate.[3]

---

**2.** Courts have generally utilized principles developed in cases arising under 42 U.S.C. § 1988 to analyze fee applications under 20 U.S.C. § 1415(e)(4)(B). *See, e.g., Phelan v. Bell,* 8 F.3d 369, 373 (6th Cir.1993); *Whitehouse v. Sullivan,* 949 F.2d 1005 (8th Cir.1991); *Massachusetts Dept. of Public Health v. School Comm.,* 841 F.Supp. 449 (D.Mass.1993); *Field v. Haddonfield Bd. of Educ.,* 769 F.Supp. 1313, 1320 (D.N.J. 1991).

**3.** The same holds true for the requested amount of expert witness fees. Plaintiff's counsel, in the last page of his affidavit submitted to the Court, delineates various expenses, including expert fees for Joseph M. Rochford, M.D., and David J. Gallina, M.D., P.A. (Pl.'s Br. in Supp. of Mot. for Summ. J., Ex. 1(a) (Sussan Aff.).) Plaintiff does not provide the Court with any other evidence regarding the reasonableness of the experts' fees. Upon resubmission of her fee application, plaintiff should provide such evidence to assist the Court in determining the amount of costs to be awarded, if any.

Rather than engage in conjecture, the more prudent course is to deny plaintiff's request for attorneys' fees and costs without prejudice to the filing of a properly supported application.

The Court takes no position at this time on defendants' remaining arguments. However, the school district has raised an issue that may affect our fee determination should S.D. submit a properly supported application to the Court at a later date. More specifically, the district maintains that any award of attorney's fees and costs should be significantly reduced due to plaintiff's failure to cooperate with the district on various occasions.[4] (Def.'s Br. in Opp'n at 10.) Because the statute contemplates the reduction of fees in certain circumstances, *see* 20 U.S.C. § 1415(e)(4)(F), this issue could affect the Court's determination of a reasonable award under the circumstances presented here. Accordingly, the parties are directed to address the district's contention upon resubmission of plaintiff's fee application.

---

4. Portions of the record support the district's contention. For example, once the district learned that S.D. was visiting residential facilities, it asked S.D. to provide it with information on those facilities. (Seel Aff., Ex. C: Letter from Ms. Seel to Mr. Sussan (Dec. 20, 1996) ("I understand that Mrs. [D.] has made independent explorations of alternative placements for [J.G.]. Will you please provide me with copies of any materials she has received from those schools or institutions."); Seel Aff., Ex. F: Letter from Ms. Seel to Mr. Sussan (Jan. 16, 1997) ("Please provide me with copies of all materials involving placements that your client feels would offer free appropriate public education for J.G. and the reasons why.").) It appears that S.D. did not respond to Manville's requests for the sharing of information. (Oberwanowicz Aff. ¶ 21.) When the district learned that S.D. planned to visit Pathway, it offered to have a team accompany her to the institution. Plaintiff, however, declined Manville's offer. (*Id.* ¶ 25.)