J.C., a minor by his parents, J.C. and C.C., Plaintiffs,

v.

MENDHAM TOWNSHIP BOARD OF EDUCATION, Defendant.

No. CIV.A. 98–293.

United States District Court, D. New Jersey.

Dec. 9, 1998.

---

Herbert D. Hinkle, Lawrenceville, NJ, for Plaintiffs.

Ellen S. Bass, Rand, Algeier, Tosti & Woodruff, Morristown, NJ, for Defendant.

## *OPINION*

WOLIN, District Judge.

This matter comes before the Court on plaintiffs' motion for summary judgment on its application for attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B). The Court has decided the matter pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons stated herein, the Court will deny plaintiffs' motion for summary judgment and dismiss plaintiffs' complaint without prejudice.

## BACKGROUND

Plaintiff J.C. is a minor who has certain learning disabilities that entitle him to receive specialized educational instruction pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. In accordance with the individualized

educational program developed for J.C. for the period from March 10, 1997, to March 10, 1998, he was placed in a program at the Developmental Learning Center ("DLC"), a private facility located outside his school district, Mendham Township Public Schools ("Mendham"), the defendant in this matter.

Subsequent to J.C.'s initial placement at DLC, Mendham created an in-district special education program that Mendham felt would better meet J.C.'s educational needs than DLC. In July and August of 1997, J.C.'s parents and Mendham discussed the possibility of transferring J.C. from DLC to the in-district program beginning in the fall of 1997. J.C.'s parents felt that the decision to transfer J.C. to the in-district program was premature and sought additional investigation of the matter. A barrage of correspondence ensued between the parties.

In a letter dated August 25, 1997, J.C.'s parents requested that J.C. be permitted to continue to attend DLC pending the resolution of his placement. Mendham did not directly address this request but did propose, in a letter dated August 29, 1997, a meeting between J.C.'s parents and various Mendham personnel on September 4, 1997, "to further discuss the in-district program we are designing for your son." J.C.'s parents did not receive this letter until September 2, 1997, and they notified Mendham that they would be unable to attend the meeting. J.C.'s father asserts that on September 2, 1997, he called Mendham and was informed that Mendham was denying the parents' request to continue J.C.'s placement at DLC.

On September 9, 1997, Herbert D. Hinkle ("Mr.Hinkle"), counsel for J.C. and his parents, filed a petition with the Office of Special Education of the New Jersey Department of Education, requesting a due process hearing in accordance with the provisions of N.J.A.C. 6A:14–2.7. On September 11, 1997, Mr. Hinkle filed, on behalf of plaintiffs, a notice of motion and supporting letter brief with the Commissioner of Education seeking emergent relief maintaining J.C.'s placement at DLC "until the dispute over the proposed change in placement is resolved." In support of their argument, plaintiffs cited to the "stay-put" provisions of 20 U.S.C. § 1415(j), which provides that during the pendency of any proceedings conducted pursuant to the IDEA, "the child shall remain in the then-current educational placement of such child . . . ."

Also on September 11, 1997, Mendham sent J.C.'s parents a letter advising that J.C.'s placement at DLC would terminate on September 26, 1997, and that on September 29, 1997, J.C. would begin his new placement at the in-district program.

On September 16, 1997, Mr. Hinkle and Ellen S. Bass ("Ms.Bass"), counsel for Mendham, had a telephone conversation memorialized in a letter from Ms. Bass to Mr. Hinkle of the same date. In her letter, Ms. Bass indicated that Mendham agreed to continue paying tuition for J.C.'s placement at DLC "until the parents have had an opportunity to visit the proposed new program and discuss it in greater detail with school personnel." Ms. Bass advised Mr. Hinkle that J.C.'s parents could disregard the September 29, 1997 date specified in Mendham's September 11, 1997 letter for J .C. to begin the in-district placement. She noted that "it is important that a meeting with the [Child Study] Team, and a visit to the new program, be arranged and take place promptly." Ms. Bass's letter mentioned that "in light of the above," Mr. Hinkle had expressed a willingness to withdraw the due process and emergent relief requests, "without prejudice," in order to give the parties an opportunity to resolve the situation amicably.

Mr. Hinkle then sent a letter dated September 17, 1997, to the Division of Special Education and the Office of Administrative Law, stating that his clients' request for emergent relief "has been settled and I am withdrawing that motion. The settlement also resolves the underlying dispute . . . ." Mr. Hinkle asked that the "underlying petition" be withdrawn without prejudice.

On October 22, 1997, Seth N. Broder of Mr. Hinkle's office wrote to Ms. Bass, stating, "Now that the above case has been settled, please contact this office and advise as to your client's position regarding reimbursement of fees in this matter."

In a certification accompanying Mendham's opposition to J.C.'s motion for summary judgment, Ms. Bass asserts that the parties' efforts subsequent to September 1997 to amicably resolve the issue of J.C.'s placement were unavailing. As a result, she wrote to the Division of Special Education on October 23, 1997, requesting the initiation of mediation pursuant to N.J.A.C. 6A:14–2.6. There is no indication on the record before the Court as to further progress in resolving the issue of J.C.'s placement.

On January 23, 1998, plaintiffs filed a complaint with this Court seeking recovery of attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B). In the complaint, plaintiffs make the following allegations:

6. Last year, a dispute arose between Plaintiffs and Defendant concerning the placement of J.C., with the Defendant seeking to move J.C. from his current placement at the Developmental Learning Center ("DLC"), a private school for children with autism and related disabilities, to alternatively, an in-district program.

7. Plaintiffs refused the change in placement believing that J.C. continued to need the highly specialized services available to DLC and that he would seriously regress if moved at this time to the program advocated by Defendant.

8. When efforts to informally resolve the matter failed, Plaintiffs sought a hearing before the New Jersey Commissioner of Education pursuant to the procedure established under the IDEA.

9. While the matter was pending before the Commissioner of Education, Defendant agreed to Plaintiffs' demand for continued placement at DLC.

10. Plaintiffs are prevailing parties within the meaning of 20 U.S.C.A. § 1415(E)(4) [now 20 U.S.C. § 1415(i)(3)(B) ] and are entitled to reimbursement of attorney's fees and costs in conjunction with this matter.

Plaintiffs have moved for summary judgment on their complaint, and defendant has opposed summary judgment.

## DISCUSSION

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 20 U.S.C. § 1415(i)(3)(A) and 28 U.S.C. § 1331.

### Summary Judgment

The Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of demonstrating that there is no genuine issue as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where a summary judgment motion is properly made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). If the adverse party fails to respond with a showing that there is a genuine issue for trial, "summary judgment, if appropriate, shall be entered against the adverse party." *Id.*

In making its determination, the Court must draw all reasonable inferences in favor of the non-moving party. *See National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1581 (3d Cir.1992).

### Standard for Recovery of Attorneys' Fees Under § 1415(i)(3)(B)

Pursuant to § 1415(i)(3)(B), in any action brought under § 1415, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is a prevailing party."

Naturally, much debate has surrounded the determination of what qualifies a party as "prevailing." The legislative history of the most recent amendment to the attorneys' fees provision of the IDEA directs that the

term "'prevailing party' ... be construed consistent with the U.S. Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)." H.R.Rep. No. 105–95, at 105–06 (1997), reprinted in 1997 U.S.C.C.A.N. 78, 103–04. The Court notes that the determination of whether a party is prevailing "is left to the sound discretion of the court in light of the policies which Congress sought to promote in enacting the provisions." *D.B. v. Ocean Township Bd. of Educ.*, 985 F.Supp. 457, 541 (D.N.J.1997), *aff'd*, 159 F.3d. 1350, No. 97–5813 (3d Cir. July 21, 1998).

*Hensley* is the first in a line of cases that interpret a statutory provision comparable to § 1415(i)(3)(B) that authorizes courts to grant attorneys' fees to the prevailing party in civil rights cases. *See* 42 U.S.C. § 1988. In *Hensley,* the Supreme Court stated that a "typical formulation" of how to determine whether a party is prevailing is to examine whether the plaintiff "succeed[ed] on any significant issue in litigation which achieves some of the benefit the [plaintiff] sought in bringing suit." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)).

■ Subsequent to *Hensley,* the inquiry into whether a party is prevailing has evolved into a two-part test. *See, e.g., Wheeler v. Towanda Area Sch. Dist.,* 950 F.2d 128, 131 (3d Cir.1991). The first determination is whether a plaintiff achieved relief on any of his or her claims. *See id.* This involves a "commonsense comparison between the relief sought and obtained." *Id.* The *Wheeler* court noted that this "liberal standard" requires that a prevailing plaintiff must "achieve[ ] some of the benefit sought in a lawsuit, even though the plaintiff does not ultimately succeed in securing a favorable judgment." *Id.*

■ The second part of the prevailing party test requires that there be a causal link between the litigation and the relief obtained by the plaintiff. *Id.* at 132. The "pressure of the lawsuit" must be "a material contributing factor in bringing about the events that resulted in obtaining the desired relief," which relief may be extrajudicial in nature. *Id.* A prevailing party "must be able to point

to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

■ The Court recognizes that to qualify as prevailing, a party need not obtain a judicial order granting relief, but may also prevail, for instance, through a settlement agreement that grants aspects of the relief sought. *See D.R. v. East Brunswick Bd. of Educ.,* 109 F.3d 896, 901 (3d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 415, 139 L.Ed.2d 318 (1997); *S.D. v. Manville Bd. of Educ.,* 989 F.Supp. 649, 655 (D.N.J.1998) ("It is well settled that relief need not be judicially decreed to justify a fee award."). Furthermore, it is widely accepted that attorneys' fees may be awarded on an interim basis: "There is no question that a prevailing party can be awarded fees before the conclusion of protracted litigation." *NAACP v. Wilmington Med. Ctr., Inc.,* 689 F.2d 1161, 1165 (3d Cir.1982); *see also E.P. v. Union County Reg'l High Sch. Dist. No. 1,* 741 F.Supp. 1144, 1149 (D.N.J.1989) (as amended Aug. 22, 1990).

■ Although courts are to give a "generous formulation" to the term "prevailing party," *see Hensley,* 461 U.S. at 433, 103 S.Ct. 1933, such a term cannot be without bounds or it would quickly prove to be a meaningless basis on which to condition the recovery of attorneys' fees. Accordingly, courts have limited the recovery of attorneys' fees to situations in which a party has prevailed in some way on the substantive merits of its claim. *See Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In the context of § 1988 claims, the Supreme Court has held that "it seems clearly to have been the intent of Congress to permit such an interlocutory award [of attorneys' fees] only to a party who has established his entitlement to some relief on the merits of his claims." *Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

■ To recover attorneys' fees, a plaintiff must have prevailed in more than a technical

or procedural sense. *See, e.g., Garland,* 489 U.S. at 792, 109 S.Ct. 1486 ("Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis,* a district court would be justified in concluding that even the 'generous formulation' we adopt today has not been satisfied."); *NAACP v. Wilmington Med. Ctr., Inc.,* 689 F.2d 1161, 1165 (3d Cir.1982); *Swietlowich v. County of Bucks,* 620 F.2d 33, (3d Cir.1980) (a party does not prevail by winning procedural victories which leave the plaintiff "no closer to a verdict in [plaintiff's] favor than [plaintiff] was before").

■ Furthermore, the relief obtained by a prevailing plaintiff cannot be merely token or nominal, but must involve some legal concession or forbearance on the part of the defendant. A plaintiff prevails when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar,* 506 U.S. at 111–12, 113 S.Ct. 566. The litigation for which the plaintiff seeks recovery of attorneys' fees must "change[ ] the legal relations of the parties such that defendants were legally compelled to grant relief." *Wheeler,* 950 F.2d at 132; *see also Garland,* 489 U.S. at 792, 109 S.Ct. 1486.

## ANALYSIS

As an initial matter, the Court rejects defendant's argument that plaintiffs have not satisfied the second part of the prevailing party test because there is no causal connection between plaintiffs' initiation of legal proceedings and defendant's reassurance that J.C.'s then-current placement would not be altered pending resolution of his permanent placement.

■ Defendant asserts in its brief that it "will present facts at trial which will demonstrate there was no causal connection" between the two events. However, as noted above, in order to defeat a summary judgment motion a defendant must "set forth specific facts showing that there is an issue for trial." Fed.R.Civ.P. 56(e). Such facts must be placed before the court by way of affidavits or other documents, not preserved for trial. Simply stating that issues of material fact will be introduced at trial is insufficient to defeat a motion for summary judgment. In the instant case, if defendant is aware of additional facts that dispute the causal connection between plaintiffs' initiation of legal proceedings and defendant's agreement to continue J.C.'s placement at DLC, defendant should have presented those facts in its opposition to plaintiffs' present motion, rather than reserving the facts to be first asserted at trial.

■ The Certification of Dr. Joseph P. Cornell, which defendant included in support of its opposition, does no more than document the fact that plaintiffs obtained a definitive response from defendant just four days after filing legal papers when no such response was forthcoming in two months of letters and phone calls exchanged prior to the initiation of legal proceedings. Under these circumstances, the Court finds that defendant's prompt response time demonstrates that the "pressure of the lawsuit" was patently a "material contributing factor" to defendant's sudden cooperation. *See Wheeler,* 950 F.2d at 132.

However, despite this determination that defendant has failed to adequately document any factual dispute regarding the causation prong of the prevailing party standard, the Court cannot grant plaintiffs' motion for summary judgment because it is not convinced that plaintiffs have qualified as prevailing under the first part of the test.

■ Plaintiffs assert that they are entitled to recover attorneys' fees because they prevailed on the issue of J.C.'s temporary placement at DLC. While plaintiffs' legal action did galvanize defendant into a response as to J.C.'s interim placement, the Court finds in light of applicable case law that plaintiffs must do more than simply procure defendant's compliance with the procedural mechanism of § 1415(j) before they are entitled to recover attorneys' fees.

The Court cannot accept plaintiffs' self-serving assertion made in Mr. Hinkle's letter of September 17, 1997, that "the settlement [reached with defendant regarding J.C.'s in-

terim placement at DLC] resolves the underlying dispute." Indeed, the underlying dispute apparently still endures. It appears from the record before the Court that the parties have made no further progress on the substantive claim at issue—that is, J.C.'s permanent educational placement. A "commonsense comparison" of the relief sought and that obtained reveals that plaintiffs have achieved a very small portion of their desired relief. *See Wheeler,* 950 F.2d at 131. Plaintiffs have obtained defendant's recognition of their right to preserve the J.C.'s status quo under § 1415(j), but the ultimate relief sought—the resolution of the issue of J.C.'s permanent placement—remains unresolved.

Plaintiffs, in initiating legal proceedings, obtained defendant's compliance with the procedural mechanism and protection afforded by § 1415(j). The Court notes that under this provision, defendant was obliged to take steps to preserve J.C.'s then-current educational placement even in the absence of plaintiffs' legal action. Plaintiffs' action did not "alter the legal relationship" between the parties, but merely spurred defendant into acknowledging the applicability of § 1415(j). *See Farrar,* 506 U.S. at 111, 113 S.Ct. 566.

Without some additional concession on the part of defendant, and in the absence of any findings by this Court or another adjudicating or mediating body as to the merits of the case, plaintiffs' "success" on J.C.'s temporary placement, standing alone, is insufficient to convert the plaintiffs into a prevailing party such that they are entitled to recover attorneys' fees at this time.

■ The Court recognizes that the attorneys' fees provisions of the IDEA were intended to protect parents with viable legal claims under the IDEA from the burden of legal fees incurred in protecting their child's educational rights. However, the provisions were not intended to serve as a bottomless source of reimbursement for any IDEA claim, however tenuous or meritless, as long as the plaintiff obtains the defendant's agreement to maintain a child's status quo placement as required under § 1415(j). Some investigation into the merits of the case must be made before a court may grant attorneys' fees under § 1415(i)(3)(B).

The courts have infrequently addressed the specific question of whether a plaintiff may recover interim attorneys' fees incurred in initiating legal proceedings that resulted in defendant's compliance with § 1415(j), but not any further determination of the merits of the underlying dispute. Neither party has cited any cases that are directly on point, and the Court has unearthed only a few cases that involve this issue. These cases have held that a plaintiff may not recover attorneys fees under § 1415(i)(3)(B) when the plaintiff has received no relief other than the preservation of the status quo. *See Board of Ed. v. Steven L.,* 89 F.3d 464, 469 (7th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997); *Christopher P. v. Marcus,* 915 F.2d 794 (2d Cir.1990); *Scanlon v. San Francisco Unified Sch. Dist.,* 1995 WL 638275, Nos. 94–15822, 94–16792 (9th Cir. October 30, 1995).

*Steven L.* involved a child whose parents contested his educational placement and obtained the benefit of the § 1415(j) stay-put provision for years while his case was pending, until his case was eventually dismissed as moot. The court refused to award attorneys' fees to the parents, holding, "The law does not view [plaintiff] as a prevailing party under § 1415(i)(3)(B) because their only ultimate victory under the IDEA is the invocation of the stay-put provision." *Steven L.,* 89 F.3d at 469. Similarly, in *Scanlon,* the court of appeals held that plaintiffs did not constitute a prevailing party by virtue of a trial court order preserving the child's placement pending the outcome of the lawsuit. *Scanlon,* 1995 WL 638275 at *2. The court of appeals noted that the trial court had not addressed "the merits of the suit in issuing this order, which did nothing more than preserve the status quo. Such 'standstill' orders do not reflect a decision on the merits." *Id.*

In *Christopher P.,* the trial court entered a temporary restraining order maintaining a child's placement at a private facility pending an administrative hearing on the child's permanent placement. *Christopher P.,* 915 F.2d at 797–98. The plaintiffs sought attorneys fees, asserting that they were a prevailing party because they had procured this court order. *Id.* at 804. The court of appeals,

however, held that when an order "does not address the merits of the case but simply preserves the status quo ... [it] is not by itself sufficient to give a plaintiff prevailing party status." *Id.* at 805.

The Court notes that in one district court case from this district, the plaintiffs were permitted to recover attorneys' fees incurred in enforcing the stay-put provision. *See Bayonne Bd. of Educ. v. R.S.*, 954 F.Supp. 933 (D.N.J.1997). However, the *R.S.* case involved a much more complex procedural background than the *J.C.* case. In *R.S.*, the plaintiffs petitioned for a due process hearing regarding R.S.'s placement. After an administrative hearing, the parties entered into a settlement agreement to change R.S.'s permanent educational placement from a private to a public school over a six-month period, providing that certain steps were taken during the transition period. *Id.* at 935–36. R.S.'s parents believed that the transitional provisions of the settlement agreement had not been carried out by Bayonne, but Bayonne denied plaintiffs' request that R.S. be permitted to continue at the private school. *Id.* at 936. Bayonne filed a motion to enforce the settlement agreement, and R.S.'s parents filed a motion for emergent relief, seeking the continuation of R.S.'s placement at the private school pending the resolution of R.S.'s permanent placement. *Id.* at 936–37. An administrative hearing was held on the issue of where R.S.'s temporary placement should be, and the administrative law judge concluded that R.S. should remain in the private school placement pending the resolution of the matter. *Id.* at 937. The district court allowed plaintiffs to recover those attorneys' fees incurred in their action to enforce the stay-put provisions of the IDEA. *Id.* at 943–44.

The *R.S.* court did not provide extensive analysis or explanation of its decision to permit the plaintiffs to recover attorneys' fees, citing almost exclusively to *Wheeler. Id.* It is clear from the procedural history of *R.S.*, however, that at least two hearings were held before administrative law judges on the merits of various facets of the dispute prior to the adjudication of the attorneys' fees claim. *Id.* at 935, 937. Furthermore, in *R.S.*, the

litigation of the stay-put provision presented a much different question than the one posed in the present case. In *R.S.*, the issue was not simply obtaining the school district's compliance with § 1415(j), but rather necessitated a substantive determination of *which* educational placement should be applied under the stay-put provision in light of the terms of the settlement agreement previously reached by the parties.

Whatever the rationale of the *R.S.* court in permitting recovery of attorneys' fees, after reviewing the relevant case law and the facts presently before the Court, the Court is persuaded that the instant case is sufficiently distinguishable from *R.S.* to require a different result.

## CONCLUSION

For the foregoing reasons, and in light of the Court's discretion to determine whether plaintiffs are entitled to recover attorneys fees, see *D.B.*, 985 F.Supp. at 541, the Court will deny plaintiffs' motion for summary judgment and dismiss plaintiffs' complaint without prejudice.

An appropriate Order is attached.