**P.G., a minor, and B.G. and P.G., his guardians, Plaintiffs,**

v.

**BRICK TOWNSHIP BOARD OF EDUCATION, Defendant.**

**No. CIV. A. 99–5952 MLC.**

United States District Court,
D. New Jersey.

Dec. 11, 2000.

Michaelene Loughlin, Loughlin & Latimer, Hackensack, NJ, for Plaintiffs.

Scott D. Thompson, Wilbert & Montenegro, PC, Brick Town, NJ, for Defendant.

## MEMORANDUM OPINION

COOPER, District Judge

This matter comes before the Court on motions for summary judgment and attorneys' fees by plaintiffs P.G., a minor, and B.G. and P.G., his guardians, against defendant Brick Township Board of Education ("Board"). Plaintiffs seek attorneys' fees and costs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* For the reasons expressed in this Memorandum Opinion, plaintiffs' motions are granted.

## BACKGROUND

P.G. was born on June 3, 1993. (Certif. of Michaelene Loughlin, Esq., dated 6–29–00 ("Loughlin Certif.") ¶ 10.) He resides with his family in the Brick Township School District. (*Id.*) P.G., classified by the Board as autistic, engages in self-injurious and aggressive behavior that interferes with his own learning and poses a danger of harm to himself and others. (*Id.* ¶¶ 10–11.)

P.G. was enrolled in the Children's Center of Monmouth County for the 1998–1999 school year. (*Id.* ¶ 12.) Plaintiffs filed a

due process petition regarding this placement on or about January 25, 1999. (*Id.*) The parties settled after two days of hearings before an administrative law judge of the New Jersey Office of Administrative Law. (*Id.* Ex. F: Special Education Settlement Decision dated 4–7–99 ("Settlement Decision") at 1.) The administrative law judge incorporated the parties' Stipulation of Settlement into his ruling. (*Id.*) The Stipulation of Settlement provides in relevant part:

1. P.G. will be placed at Children's Seashore House ("CSH"). It is anticipated that his placement at CSH will be paid in substantial part by his parents' insurance carrier. Any costs not paid by the insurance carrier will be paid by the district, with the exception of non-diagnostic, non-evaluative medical costs.... If the [insurance] company declines coverage or if P.G. is not accepted into the program at CSH, then the parents reserve the right to seek, through due process, placement of P.G. at Bancroft Neurohealth—the Lindens ("Lindens") or CSH at district expense....

2. P.G. will be evaluated for intake by CSH on or before March 8, 1999, and will be placed in the program as soon as an opening is available.

3. In the meantime, the following services will be provided to P.G. or on his behalf:
   A. Three hours per day, five days per week, extended day program in the home.
   B. Parent training.
   C. Teacher/aide training for P.G.'s teacher and aide at Children's Center of Monmouth County ("Children's Center").
   D. The Children's Center parent trainer.

4. The services outlined in number three will be coordinated and supervised by Dr. Bridget Taylor. The budget for services included in item number three (3) is $6,750.00. Dr. Taylor will be compensated at the rate of $175.00 per hour;

the balance of the money will be made available to compensated providers of the extended day program in the home. Payments will be made by the district upon submission of vouchers on forms to be supplied by it. If P.G. has not been placed by the end of ten (10) weeks, then this provision will be reviewed by the parties.

5. The parties reserve on issues regarding the development of a post-CSH placement [Individualized Education Program], including related and supplemental services to be provided to P.G. and on his behalf.

6. The parents waive their claim for transportation expenses and for reimbursement of money expended by them in providing a home program for P.G. to date.

(*Id.* ¶ 12 and Ex. F: Stipulation of Settlement dated 3–3–99 ("Stipulation of Settlement").) After reaching this settlement, plaintiffs filed a Complaint in this Court on July 14, 1999 seeking reasonable attorneys' fees and costs. (Memorandum and Order filed 3–23–00 in Civil Action No. 99–3313(MLC) ("Memorandum and Order") at 4.) This Court, with a Memorandum and Order filed March 23, 2000 ("Memorandum and Order"), granted plaintiffs' motion for summary judgment and awarded plaintiffs $18,433.01 in attorneys' fees and costs. (*Id.* at 24.)

During P.G.'s placement evaluation, it was decided to close CSH and not accept any new children such as P.G. (Loughlin Certif. ¶ 14.) Plaintiffs' counsel, Michaelene Loughlin, Esq., ("Loughlin"), wrote a letter dated April 21, 1999 to Scott D. Thompson, Esq. ("Thompson"), counsel for the Board ("April Letter"), requesting P.G.'s placement at Bancroft Neurobehavioral Stabilization Unit—The Lindens ("Bancroft"). (*Id.* ¶ 15 and Ex E: Letter from Michaelene Loughlin, Esq., to Scott Thompson, Esq., dated 4–21–99 ("April Letter") ¶ 2.) The April Letter states that, if no response is received within ten days

or defendant denies the proposed placement, plaintiffs will file another due process petition. (April Letter ¶ 2.)

After the Board did not respond within ten days of the April Letter (Loughlin Certif. ¶ 17), plaintiffs filed a due process petition on or about May 4, 1999. (Loughlin Certif. ¶ 17). Plaintiffs sought: (1) P.G.'s placement at Bancroft or another appropriate facility as soon as an opening was available; (2) development of goals concerning P.G.'s self-injurious and aggressive actions; (3) continuation of the extended day program regardless of the financial cap in the Stipulation of Settlement; and (4) payment of transportation to and from Bancroft for appointments. (*Id.* ¶ 17 and Ex F: Letter from Michaelene Loughlin, Esq., to Dr. Barbara Gantwerk dated 5–4–99 ("Due Process Petition") section III.) The due process petition was assigned to an administrative law judge. (*Id.* ¶ 18.)

After the completion of the Board's case before the administrative law judge, plaintiffs moved for summary decision. (*Id.* ¶ 19 and Ex. G: Order dated 7–13–99 at 2.) The administrative law judge granted plaintiffs' motion with an order dated July 13, 1999 ("Summary Decision Order"), finding: (1) P.G. is not receiving a "significant and meaningful education"; (2) a functional behavioral assessment is necessary to develop an appropriate Individualized Education Program ("IEP") for P.G.; and (3) this assessment may have a medical component. (Summary Decision Order at 6–7.) The administrative law judge ordered the Board to arrange for the assessment, but she did not order immediate placement at Bancroft because of the unfamiliarity of the Board's Child Support Team with Bancroft and the absence of a full consideration on the part of the Child Support Team of whether Bancroft would be an appropriate alternative to CSH.[1] (*Id.* at 6–7) The administrative law judge

therefore ordered the Board to select, in consultation with P.G.'s parents, a facility to conduct this behavioral evaluation within thirty days of July 13, 1999. (*Id.* at 7.) The administrative law judge further directed the Board to consider whether the facility can accept P.G. within a reasonable time. (*Id.*) The administrative law judge ordered the Board to continue the extended day program until P.G.'s placement at an appropriate facility. (*Id.*)

The parties did not reach an agreement on P.G.'s testing placement within the thirty-day period established by the Summary Decision Order. (Loughlin Certif. ¶ 21.) The parties did narrow the list of potential facilities to Bancroft and the Kennedy Krieger Institute ("Kennedy Krieger"). (*Id.* ¶ 22.) Plaintiffs preferred Bancroft because: (1) Bancroft had an immediate opening for P.G., whom it had already accepted, compared with an opening at Kennedy Krieger in November or December of 1999 at the earliest; (2) Bancroft was closer to P.G.'s home; (3) Bancroft provided follow-up services; and (4) it has a home-like setting. (*Id.* ¶ 22.) Plaintiffs, however, stated that a Kennedy Kreiger placement would be acceptable if P.G. could be placed at Kennedy Kreiger sooner than at Bancroft. (*Id.*) The Board preferred Kennedy Kreiger, but it would not commit to a placement at a particular facility. (*Id.* ¶ 23.)

The administrative law judge issued her final decision in this matter on September 13, 1999 ("Final Decision"). (*Id.* ¶ 24 and Ex. G: Decision dated 9–13–99 ("Final Decision").) The administrative law judge ordered P.G. to be placed at Bancroft for a "functional behavior assessment." (Final Decision at 4.) The judge, however, also ordered P.G. to be placed at Kennedy Kreiger for this assessment "if Bancroft cannot accept P.G. earlier than Kennedy Kreiger." (*Id.*) The Final Decision directed the Board to pay the transportation

---

1. The Summary Decision Order refers to a "Bradford program." (*Id.* at 6.) Most likely this is a reference to Bancroft.

costs of P.G. and his parents for their participation in the assessment. (*Id.*)

During and after these administrative proceedings, Loughlin undertook various activities on behalf of her clients. Loughlin claims she worked 7.65 hours between the Summary Decision Order of July 13, 1999 and the administrative hearing conducted on August 24, 1999 gathering information about different facilities, consulting with P.G.'s parents and their expert, corresponding with Thompson, and attending an August 2, 1999 IEP meeting regarding P.G.'s placement. (Loughlin Certif. ¶ 26.) The Director of Special Services's refusal to obtain placement information and the harm caused to P.G. by the delay supposedly necessitated these actions. (*Id.* and Ex H: Letter from Michaelene Loughlin, Esq., to Scott Thompson, Esq., dated 8–6–99; Letter from Michaelene Loughlin, Esq., to Scott Thompson, Esq., dated 8–9–99; Letter from Michaelene Loughlin, Esq., to Hon. Beatrice S. Tylutki dated 9–7–99; Letter from Michaelene Loughlin, Esq., to Ben Montenegro, Esq., dated 9–9–99; Letter from Michaelene Loughlin, Esq., to Scott Thompson, Esq., misdated 8–9–99, actually drafted and faxed 9–15–99.)

Loughlin performed further tasks on her clients' behalf between September 1, 1999 and March 24, 2000. (*Id.* ¶ 27.) This work continued even after she filed the Complaint seeking attorneys' fees and costs on December 21, 1999. She allegedly worked a total of 24.45 hours: (1) making telephone calls and writing letters to secure P.G.'s placement at Bancroft; (2) communicating with Bancroft employees, P.G.'s parents, her clients' expert, and Thompson about P.G.'s progress and the possibility of an extension of his stay at Bancroft; and (3) attending two IEP meetings. (*Id.* and Ex. I: Letter from Michaelene Loughlin, Esq., to Scott Thompson, Esq., dated 12–23–99 ("December Letter"); Letter from Michaelene Loughlin, Esq., to Scott Thompson, Esq., dated 1–18–00; Letter from Maureen Zolkiewicz to Lenore Lay-

ton dated 2–1–00; Letter from Michaelene Loughlin, Esq., to Scott Thompson, Esq., dated 2–10–00 ("February Letter").)

Loughlin contends that it was necessary for her to attend one of these IEP meetings, held at Bancroft on January 13, 2000, in order to argue that P.G. should remain at Bancroft past the original January 17, 2000 date for ending P.G.'s placement because of the recommendations of the Bancroft staff. (*Id.* ¶ 28.) She earlier asked for an extension in a letter dated December 23, 1999 ("December Letter"). (December Letter ¶ 3.) She wrote another letter dated February 10, 2000 ("February Letter") complaining of the Board's failure to have an appropriate placement for P.G. upon the termination of his Bancroft placement and indicating an intention to file an emergency due process petition. (February Letter ¶¶ 2–3.) Loughlin attended another IEP meeting, conducted at Children's Center of Monmouth County on February 16, 2000, because P.G.'s placement at Bancroft was scheduled to be terminated on that date. (Loughlin Certif. ¶ 29.)

In her certification, Loughlin claims $25,831.00 in attorneys' fees and costs. (*Id.* ¶ 33.) She breaks this amount down to: (1) $21,217.50 in attorneys' fees for administrative proceedings; (23) $3,141.00 for attorneys' fees arising out of this particular action before the Court to June 29, 2000; (3) $1,207.50 in expert fees; (4) $150.00 for payment of the service of summons and the complaint filing fee; and (5) $115.00 for costs, specified as "travel, Fed Ex service, [and] photocopying." (*Id.*) Plaintiffs also submitted a supplemental certification requesting $281.25 as compensation for the 1.25 hours expended reviewing the Board's brief in response to this motion and researching as well as writing plaintiffs' reply letter brief, the supplemental certification itself, the certification of service, and the cover letter. (Supplemental Certif. of Michaelene Loughlin, Esq., dated 7–26–00 ("Supplemental Certif.") ¶ 3.)

The amount of attorneys' fees is based on Loughlin's new rate, adopted for new cases in July of 2000, of $225.00. (Loughlin Certif. ¶ 5 & n. 1.) The Complaint refers to her old rate of $200.00 an hour. (Compl.¶ 25.) The requested $1,207.50 in expert fees represents compensation for the services of Dr. Bridget Taylor, Psy.D. ("Dr.Taylor"), including conferences with Loughlin, preparation for her testimony at the September 1, 1999 administrative hearing, time at the hearing, and travel time to and from the hearing. (Loughlin Certif. Ex. K: Bridget Taylor, Psy.D., Fee for Services ("Taylor Fee for Services Sheet").) The amount is based on 6.9 hours billed at $175.00 an hour. (*Id.*) Plaintiffs also request $155.50 to pay for the services of a home trainer provided as part of the extended day program mandated by the Summary Decision Order. (Loughlin Certif. ¶ 31.) Plaintiffs claim that the original $6,750.00 set aside by the Stipulation of Settlement for such expenses had been exhausted. (*Id.*) It does not appear that this home trainer fee is included in the $25,831.00 total.[2]

Plaintiffs contend that they are entitled to attorneys' fees and costs because they are prevailing parties. Plaintiffs argue they are prevailing parties under the IDEA because: (1) they obtained almost all of the relief they sought in the due process proceeding, namely the placement of P.G. at Bancroft for an assessment except if he could be accepted at Kennedy Kreiger at an earlier date, the continuation of the home study program, and the reimbursement of the transportation costs of P.G. and his parents arising out of their participation in the assessment; and (2) the necessary causal relationship exists between this relief and the due process proceedings. (Pls.' Br. in Supp. at 10.)

In terms of the amount of the award, plaintiffs argue that they should receive full compensation because they successfully obtained P.G.'s placement, the payment of transportation costs, and the continuation of the home study program. (*Id.* at 11.) They contend that the amount sought in attorneys' fees is reasonable in light of the course of the due process proceedings. (*Id.*) They also seek compensation for fees and expenses incurred as a result of efforts to ensure the implementation of the administrative judge's decisions. (*Id.*)

Plaintiffs submit certifications of Rebecca K. Spar, Esq. ("Spar") (Loughlin Certif. Ex. B: Certif. of Rebecca K. Spar, Esq., dated 2–7–00 ("Spar Certif.")) and David L. Harris ("Harris"), Esq. (Loughlin Certif. Ex. C: Certif. of David L. Harris, Esq., dated 12–23–96 ("Harris Certif.")), indicating that an attorney of Loughlin's experience and ability could actually bill more than $225.00 per hour in New Jersey. (Harris Certif. ¶ 5 ("[A]n attorney with Ms. Loughlin's experience, abilities and academic accomplishments would command a billing rate in New Jersey of $275.00 an hour."); Spar Certif. ¶ 6 (stating that Loughlin's former hourly rate of $200.00 is within the range of prevailing rates, that Loughlin could charge more, and that other attorneys with less experience command fees in excess of $225.00); Pls.' Br. in Supp. at 12.) Plaintiffs argue that they may recover expert fees for the services of Dr. Taylor at the rate of $175.00 per hour because the reasonableness of this rate is supposedly established by the Board's agreement in the Stipulation of Settlement to pay Dr. Taylor at the same rate for her supervision of P.G.'s home program. (Pls.' Br. in Supp. at 13.) Plaintiffs further argue that they should be compensated for the costs of copying, the filing fee, travel, and the use of Lawyers Service because these items are traditionally recoverable under the IDEA. (*Id.*)

**2.** Plaintiffs' Complaint also requests payment of the costs of transportation for the participation of P.G. and his parents in the Bancroft program as ordered by the Final Decision. (Compl.¶ 26.) No particular amount is mentioned, and the Court notes that the certifications as well as briefs do not apparently request transportation compensation. The Court therefore will deny plaintiffs' request for such compensation.

They also seek payment of $155.50 for the services of the home instructor. (*Id.*)

Without apparently challenging plaintiffs' right to attorneys' fees and costs, the Board, in a letter brief,[3] focuses on particular items and the alleged question of fact regarding the reasonableness of the requested fees. (Def.'s Br. in Opp'n at 1–5.) Defendant asserts that any award should be significantly reduced because, "except for the time actually expended in the hearing process, much of the work for [the] hearing was completed and included as part of counsel's previous submission for attorney's fees in the prior due process action." (*Id.* at 3.) The Board also argues that the services rendered after September 15, 1999, the last day Loughlin supposedly reviewed the Final Decision, are not compensable because they were not causally connected with any litigation. (*Id.* at 2.) The Board emphasizes that most post-litigation activities were consensual, did not involve further litigation, and merely constituted follow-up consultations between Loughlin and her clients. (*Id.* at 2–3.) Defendant concedes that the fees incurred on December 19, 1999, December 20, 1999, June 16, 2000, June 17, 2000, June 27, 2000, and June 29, 2000 are properly recoverable because they relate to this action for attorneys' fees and costs before the Court. (*Id.* at 4.)

Defendant further challenges a number of specific charges: (1) the bills for traveling to and from Hackensack, New Jersey, for client conferences because the distance placed an undue burden on the Board; (2) the fee for travel from Hackensack, New Jersey, to Haddonfield, New Jersey, because it was incurred merely as follow-up work after the resolution of the litigation; and (3) a charge on February 15, 2000 for a 4.65 hour telephone call between Lough-

lin and the defendant's counsel on the grounds that defendant's counsel has no record of such a lengthy call and it occurred after the Final Decision. (*Id.*) Defendant claims that summary judgment is inappropriate because issues of material fact exist as to whether certain charges, presumably the items mentioned above, are compensable under the IDEA, whether Dr. Taylor's hourly rate is the prevailing rate for an expert in her field, and whether the requested attorneys' fees are reasonable and the hours expended necessary. (*Id.* at 5.)

In a letter brief, plaintiffs respond to these arguments by stating that: (1) the request does not duplicate compensated work because the billing in this matter commenced with the drafting of the second due process petition on May 3, 1999; (2) the travel involved attending due process hearings, a settlement conference, and IEP meetings as opposed to client conferences; (3) the billing for the 4.65 hour telephone call on February 15, 2000 was an error corrected on the last page of the billing statement with a deduction of the appropriate amount; (4) attorneys' fees are recoverable for the post-decision activities because they were undertaken to monitor and enforce the Final Decision; (5) the Board's agreement to pay Dr. Taylor $175.00 for supervising P.G.'s home program establishes the reasonableness of the rate; and (6) summary judgment is appropriate because defendants have failed to raise any genuine issue of material fact. (Pl.'s Reply Br. in Supp. at 1–2.)

### DISCUSSION

A court shall enter summary judgment when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is

---

**3.** The Board also submitted a copy of the letter brief it filed in opposition to plaintiffs' motion for summary judgment in the previous action before this Court. (Def.'s Br. in Opp'n dated 2–2–00.) The Board, in addition to other arguments not relevant to this case or included in the later brief, questions Lough-

lin's special education experience and argues that a rate between $100.00 and $150.00 per hour is more appropriate because this supposedly is the prevailing rate charged by attorneys representing school boards. (*Id.* at 4.)

entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this initial burden, the opposing party must establish that a genuine issue of material fact exists. *Jersey Cent. Power & Light Co. v. Township of Lacey,* 772 F.2d 1103, 1109 (3d Cir.1985). The opposing party cannot rest on mere allegations; rather, it must present actual evidence that creates a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quotation omitted); *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990). Issues of fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

## I. *Attorneys' Fees and Costs Under the IDEA*

Plaintiffs seek attorneys' fees and costs under the IDEA, 20 U.S.C. § 1400 *et seq.* This statute provides in relevant part:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.

20 U.S.C. § 1415(i)(3)(B), previously 20 U.S.C. § 1415(e)(4)(B).

This Court's task is two-fold in adjudicating the claim for attorneys' fees and costs presented here. First, we must decide the issue of whether plaintiffs are prevailing parties. By its terms, Section 1415(i)(3) requires that a plaintiff be the "prevailing party" to recover attorneys fees. *E.M. v. Millville Bd. of Educ.,* 849 F.Supp. 312, 316 (D.N.J.1994); *cf. Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("A plaintiff must be a 'prevailing party' to recover an attorney's fee award under [42 U.S.C.] § 1988."). If we find that plaintiffs so

qualify, we must then determine the amount of reasonable fees and costs, if any, owed by the District. *B.K. v. Toms River Bd. of Educ.,* 998 F.Supp. 462, 474 (D.N.J.1998).

### A. Prevailing Party

■ The test to determine prevailing party status is well established in this Circuit. *See, e.g., Holmes v. Millcreek Township Sch. Dist.,* 205 F.3d 583, 593 (3d Cir.2000); *Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh,* 964 F.2d 244, 250 (3d Cir.1992); *B.K.,* 998 F.Supp. at 474. The test, which is a two-part inquiry, requires a court to determine whether: (1) the plaintiff obtained relief on a significant claim in the litigation; and (2) there is a causal connection between the litigation and the relief obtained from the defendant. *Metro. Pittsburgh Crusade,* 964 F.2d at 250 (quoting *Dunn v. United States,* 842 F.2d 1420, 1433 (3d Cir.1988)); *B.K.,* 998 F.Supp. at 474; *see also Holmes,* 205 F.3d at 593. The application of this test is left to the district court's discretion. *D.B. v. Ocean Township Bd. of Educ.,* 985 F.Supp. 457, 541 (D.N.J.1997), *aff'd,* 159 F.3d 1350 (3d Cir.1998).

■ To determine whether a party has met the first prong of the prevailing party test, a court compares the relief the plaintiff sought from the lawsuit with the relief eventually obtained. *B.K.,* 998 F.Supp. at 474 (quoting *Hughes v. Lipscher,* 852 F.Supp. 293, 301–02 (D.N.J.1994) (citing *Institutionalized Juveniles v. Sec'y of Pub. Welfare,* 758 F.2d 897, 911 (3d Cir.1985))). The plaintiff must show that the relief obtained caused a material alteration in his legal relationship with the defendant and that this alteration is not merely technical or de minimis. *Holmes,* 205 F.3d at 593 (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) and *Hensley,* 461 U.S. at 424, 103 S.Ct. 1933). "[P]laintiffs will be prevailing parties even though the relief they obtained is not identical to the relief they specifically

demanded, as long as the relief obtained is of the same general type." *Institutionalized Juveniles*, 758 F.2d at 912. Most courts have permitted plaintiffs to recover attorneys' fees for success on the administrative level. *E.g. Field v. Haddonfield Bd. of Educ.*, 769 F.Supp. 1313, 1329 (D.N.J.1991); *see also* William H. Danne, Annotation, *Who is Prevailing Party for Purposes of Obtaining Attorney's Fees under § 615(i)(3)(B) of Individuals with Disabilities Education Act (20 U.S.C.A. § 1415(i)(3)(B)) (IDEA)*, 153 A.L.R. Fed. 92–101 (1999) (collecting cases permitting recovery of fees and costs when success was achieved at administrative level).

■ Plaintiffs clearly establish that the first prong of the prevailing party test has been satisfied. The Board itself does not contend that plaintiffs failed to satisfy the first prong of the prevailing party test. Plaintiffs sought: (1) P.G.'s placement at Bancroft or at another facility as soon as an opening became available; (2) development of goals and objectives to deal with P.G.'s destructive behavior; (3) continuation of the home study program; and (4) payment of transportation to and from Bancroft. (Loughlin Certif. ¶ 17; Due Process Petition section III.) With the exception of the demand for the development of goals and objectives, which the plaintiffs claim they abandoned, (Pls.' Br. in Supp. at 2 n. 2), the Summary Decision Order and Final Decision gave the plaintiffs everything they wanted. (Final Decision at 4; Summary Decision Order at 6–7.) This relief also materially altered P.G.'s legal relationship with the Board.

Likewise, the Board, apart from contesting the causal relationship between post-decision activities and the administrative proceedings (Def.'s Br. in Opp'n at 2–3), does not generally challenge the conclusion that plaintiffs have satisfied the causation prong of the prevailing party test. The Third Circuit's standard requires the district court to determine whether "there is a 'causal connection between the litigation and the relief [obtained] from the defendant.'" *Holmes*, 205 F.3d at 593 (quoting *Institutionalized Juveniles*, 758 F.2d at 910). The district court should assess whether the litigation represents "a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief." *Metro. Pittsburgh Crusade*, 964 F.2d at 250 (quoting *Dunn* 842 F.2d at 1433); *B.K.*, 998 F.Supp. at 474. "The plaintiff's lawsuit need not be the sole cause of defendant's action," even though a causal relationship must exist between the lawsuit and the relief obtained. *Metro. Pittsburgh Crusade*, 964 F.2d at 250; *B.K.*, 998 F.Supp. at 474. The district court must also apply the most expansive definition of causation. *Metro. Pittsburgh Crusade*, 964 F.2d at 250 (quoting *Dunn*, 842 F.2d at 1433); *B.K.*, 998 F.Supp. at 474. For instance, the district court should not insist that the litigation constitute the "but for" or proximate cause of the relief obtained. *Metro. Pittsburgh Crusade*, 964 F.2d at 251.

The Court finds that a causal connection exists between the administrative proceedings and the relief obtained.[4] The Board did not voluntarily accede to plaintiffs' request for a Bancroft placement and other remedies. The Board failed to respond within the requested ten-day period to plaintiffs' request that P.G. be placed at Bancroft, thereby resulting in the filing of the due process petition. (Loughlin Certif. ¶¶ 15–17.) Plaintiffs only achieved their desired relief after the administrative law judge issued a Summary Decision Order and a Final Decision in their favor. (*See, e.g.,* Final Decision at 4; Summary Decision Order at 6–7.)

Plaintiffs therefore satisfy the two prongs of the prevailing party test. The

---

4. Although the Board argues that this causation prong is not satisfied for the actions taken after Loughlin's review of the Final Decision (Def.'s Br. in Opp'n at 2), the Court considers this contention in its discussion of the amount of reasonable fees and costs owed by the Board. *See infra* part I.B.

Court must now consider the amount of reasonable attorneys' fees and costs owed by the Board.

### B. The Amount of Reasonable Attorneys' Fees and Costs

█ Plaintiffs seek a total of $24,639.75 in attorneys' fees, $1,207.50 in expert fees for the services of Dr. Taylor, $265.00 in other costs, and $155.50 for the services of a home trainer. (Loughlin Certif. ¶¶ 31, 33; Supplemental Certif. ¶ 3.)

The IDEA sets forth the rate on which an award of attorneys' fees should be based. The statute provides in relevant part:

Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection.

20 U.S.C. § 1415(i)(3)(C).

The Supreme Court, in interpreting 42 U.S.C. ¶ 1988, has held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This standard has been applied to the IDEA. *Holmes v. Millcreek Township Sch. Dist.*, 205 F.3d 583, 593 n. 12 (3d Cir.2000); *S.D. v. Manville Bd. of Educ.*, 989 F.Supp. 649, 656 (D.N.J.1998). The result of the computation is called the lodestar. The lodestar is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *S.D.*, 989 F.Supp. at 656.

A reasonable hourly rate awarded in an IDEA case is calculated according to "market rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). A similar analysis is generally applied in other areas of federal law where an award of attorneys' fees to the prevailing party is authorized. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir.1996); *Student Pub. Interest Research Group, Inc. v. AT & T Bell Labs.*, 842 F.2d 1436, 1448 (3d Cir. 1988) ("*PIRG* "). Thus, the Court may look to these cases to determine the rate to be awarded in an IDEA case.

The prevailing party bears the burden of establishing by way of satisfactory evidence, " 'in addition to [the] attorney's own affidavits,' that the requested hourly rates meet this standard [of reasonableness]." *Washington*, 89 F.3d at 1035 (quoting *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541); *see also S.D.*, 989 F.Supp. at 656. The Third Circuit has explained that the prevailing party has the burden of demonstrating "the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity." *PIRG*, 842 F.2d at 1450; *see also S.D.*, 989 F.Supp. at 656. The party normally satisfies this burden by submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience. *S.D.*, 989 F.Supp. at 656 (citing *Washington*, 89 F.3d at 1036.) Once the prevailing party has met this burden, the opponent may contest the prevailing party's prima facie case only with record evidence. *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir.1997); *Washington*, 89 F.3d at 1035–37. If the opponent fails to do so, the district court may not reduce the requested rate. *Washington*, 89 F.3d at 1036 (quoting *Griffiths v. Cigna Corp.*, Nos. 94–2090 & 94–2091, slip op. at 14–16 (3d Cir. Nov. 30, 1995)).

The Court finds that plaintiffs have satisfied their initial burden to show that the requested rate of $225.00 an hour is a reasonable one. According to Loughlin's

certification, her ordinary billing rate in civil rights cases is between $225.00 and $250.00 per hour. (Loughlin Certif. ¶ 5.) Plaintiffs have also submitted affidavits from two attorneys in the relevant legal community, attesting to the range of prevailing rates charged by comparable attorneys. (*Id.*; Spar Certif.; Harris Certif.) Spar, a New Jersey attorney specializing in education law (Spar Certif. ¶¶ 1–3), stated that Loughlin's former hourly rate of $200.00 per hour is within the range of prevailing rates charged by attorneys with similar skills and experience and that other attorneys with less experience command fees in excess of $225.00 per hour. (*id.* ¶ 6). Harris, a previous member and chair of the Supreme Court of New Jersey's Fee Arbitration Committee (Harris Certif. ¶ 3), stated, in a certification dating from 1996, that an attorney with Loughlin's qualifications, experience, and abilities, would obtain a billing rate of $275.00 per hour. (*id.* ¶ 5.) This Court itself, in the earlier fee case, awarded Loughlin attorneys' fees at the admittedly lower but comparable rate of $200.00 per hour. (Memorandum and Order at 16–17.)

The increase in Loughlin's billing rate from $200.00 per hour to $225.00 per hour does not affect plaintiffs' prima facie showing, inasmuch as the certifications of attorneys Spar and Harris also support the latter figure. (Harris Certif. ¶ 5; Spar Certif. ¶ 6.) The Court therefore finds that plaintiffs have made out their prima facie case for an attorneys' fee rate of $225.00 per hour.

██ The Board does not adequately challenge plaintiffs' prima facie showing. The Board does not mention the above increase in Loughlin's rate. More importantly, it fails to submit any affidavits or certifications concerning the proper prevailing rate or even explicitly criticize the statements in the certifications of Spar and Harris. Defendant's brief submitted in opposition to plaintiffs' motion for summary judgment in the previous action does question Loughlin's special education expe-

rience and argues that a rate between $100.00 and $150.00 per hour is more appropriate because this is the prevailing rate charged by attorneys representing school boards. (Def.'s Br. in Opp'n dated 2–2–00 at 4.) Defendant, however, still presents no evidence to support these arguments while plaintiffs submitted documents attesting to both Loughlin's experience and the appropriate rate. (*See, e.g.,* Loughlin Certif. ¶¶ 3–4 (describing Loughlin's civil rights and education law experience); Spar Certif. ¶ 5; Harris Certif. ¶ 5.) This Court also rejected defendant's argument for a lower rate based on the rate charged by school board attorneys in its prior decision. (Memorandum and Order at 16–17.) The Court will therefore accept plaintiffs' rate of $225.00 per hour.

Having arrived at the appropriate hourly rate, the Court will now determine what services should be included in the calculation. The party seeking a fee award must submit evidence to support both the hours worked and the rate claimed. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. "Where the documentation is inadequate, the district court may reduce the award accordingly." *Id.* The district court should also exclude from the initial fee calculation hours that were not "reasonably expended." *Id.* at 434, 103 S.Ct. 1933 (quotation omitted). The attorney for the prevailing party should therefore make "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* A reduction may also be required if the plaintiff failed to prevail on any claims unrelated to the successful claims, or, if the successful and unsuccessful claims are intertwined, the plaintiff has only achieved a limited success and not "excellent results." *Id.* at 435–36, 103 S.Ct. 1933.

The Board's apparent contention of an overlap in billing must be rejected. The Board contends that, except for the unspecified activities actually related to the

hearing process before the administrative law judge, much of the work for this matter was completed and included as part of the attorney's fees request in the previous civil action before this Court. (Def.'s Br. in Opp'n at 3.) Contrary to defendant's unsupported argument, the materials submitted by Loughlin indicate that no duplication of hours exists. (*Compare* Loughlin Certif. Ex. D: Billing Statement for Education Docket no. 99–5922 ("Second Due Process Billing Statement") at 1–6 *with* Certification of Michaelene Loughlin dated 12–23–99 Ex. D: Billing Statement for Education Docket no. 99–1333 ("First Due Process Billing Statement") at 4–5.) As shown by the Second Due Process Billing Statement, billing for the second due process proceedings began with the drafting of the due process petition on May 5, 1999. (Second Due Process Billing Statement at 1.) An examination of the entries on the First and Second Due Process Billing Statements shows that Loughlin did not bill any particular service on both statements. (Second Due Process Statement at 1–6; First Due Process Billing Statement at 4–5.)

Perhaps most seriously, the Board contests the award of fees for services rendered after the Final Decision. (Def.'s Br. in Opp'n at 2–4.) It argues that no fees should be awarded for the services provided after September 15, 1999, the last day defendant believes Loughlin reviewed an administrative decision,[5] because those services were unrelated to any pending litigation. (*Id.* at 2–3.) It contends that those services involved consensual activities between plaintiffs and the Board and follow-up work between Loughlin and her clients. (*Id.*) The Board, however, does accept liability for services relating to this attorneys' fees action, specifically those in-

curred on December 19, 1999, December 20, 1999, June 16, 2000, June 17, 2000, June 27, 2000, and June 28, 2000.[6] (*Id.* at 3–4.) Those admitted expenses aggregate to $2,949.75. (Second Due Process Billing Statement at 4–5.)

Defendant's argument raises an issue requiring careful consideration. Neither side cites cases expressly dealing with the compensability of enforcement and compliance activities under the IDEA. Courts, however, have concluded that compliance and monitoring activities may be compensated under the IDEA. *Lucht v. Molalla River Sch. Dist.* 225 F.3d 1023, 1026–30 (9th Cir.2000) (awarding attorneys' fees and costs for attendance at IEP meetings ordered by Superintendent pursuant to Complaint Resolution Procedure); *Amy F. v. Brandywine Heights Sch. Dist.,* No. CIV. A. 95–1867, 1997 WL 672627, at *19 (E.D.Pa. Oct.30, 1997) (Leomporra, M.J.) (awarding compensation for enforcement efforts); *J.G. v. Bd. of Educ. of Rochester City Sch. Dist.,* 648 F.Supp. 1452, 1460 (W.D.N.Y.1986) (stating intention to award fees for future monitoring of school board's compliance with consent decree), *modified on other grounds,* 830 F.2d 444, 447–48 (2nd Cir. 1987) (modifying by providing for attorneys' fee award to be made under 42 U.S.C. § 1988 because of uncertainty as to existence of direct cause of action for attorneys' fees under IDEA). *But see, e.g., Heldman v. Sobol,* 846 F.Supp. 285, 290 (S.D.N.Y.1994) (stating that success in obtaining favorable appellate decision does not justify compensation for work done after decision). Similarly, compensation is available for post-judgment enforcement and monitoring litigation under compara-

---

**5.** It appears that the last day Loughlin reviewed the administrative decisions was in fact December 12, 1999. (Second Due Process Billing Statement at 4.)

**6.** Defendant refers to June 29, 2000, but the Second Due Process Billing Statement has no entry for that date. The Court assumes that

defendant is referring to the services provided on June 28, 2000 for researching and drafting the brief, editing Loughlin's certification and brief, and drafting cover letters. (Second Due Process Billing Statement at 5.) This June 28, 2000 entry is included in the computation above.

ble fee-shifting statutes. *See, e.g., Pennsylvania v. Del. Valley Citizens' Council,* 478 U.S. 546, 559, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), *supplemented by* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *Hadix v. Johnson,* 1998 FED App. 0117P, ¶¶ 34–46, 143 F.3d 246, 256–59 (6th Cir.1998), *aff'd on other grounds sub nom., Martin v. Hadix,* 527 U.S. 343, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999); *Jenkins ex rel. Jenkins v. Missouri,* 127 F.3d 709, 716–720 (8th Cir.1997).

■ These latter courts have dealt with post-judgment activities under the test developed in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), for cases in which plaintiffs prevail on some but not all of their claims. *See, e.g., Hadix,* 1998 FED App. ¶ 38, 143 F.3d at 257; *Jenkins,* 127 F.3d at 716; *Institutionalized Juveniles v. Sec'y of Pub. Welfare,* 758 F.2d 897, 918–20 (3d Cir.1985). Initially, the district court must determine whether the post-decision issues are "inextricably intertwined with those [issues] on which the plaintiff prevailed in the underlying suit or whether they are distinct." *Hadix,* 1998 FED App. ¶ 38, 143 F.3d at 257 (quoting *Jenkins,* 127 F.3d at 717).

If they are intertwined, a plaintiff is generally entitled to fees for the post-decision activities. *Id.* (quoting *Jenkins,* 127 F.3d at 718). Examples of intertwined and compensable activities are compliance monitoring and the enforcement as well as defense of a remedy. *Id.* (quoting *Jenkins,* 127 F.3d at 717). Compensation then is based on such factors as plaintiff's overall success in the case as a whole and the necessity and usefulness of the particular post-decision activity. *Jenkins,* 127 F.3d at 718. Under *Hensley,* the court must determine whether the plaintiff achieved "excellent results" or only partial or limited success based on a comparison of the overall relief obtained with the hours reasonably expended. *Hensley,* 461 U.S. at 434–36, 103 S.Ct. 1933. When a plaintiff has obtained "excellent results," the court ordinarily should not reduce the amount of recovered attorneys' fees even if the plaintiff did not prevail on every contention. *Id.* at 435, 103 S.Ct. 1933. When a plaintiff has achieved only partial or limited success, a lesser award may be justified. *Id.* at 435–36, 103 S.Ct. 1933.

■ If, however, the issues are distinct, plaintiffs may obtain fees for the post-decision activities only if they prevail on the separate issue involved in the relevant post-decision activities. *Hadix,* 1998 FED App. ¶ 38, 143 F.3d at 257 (citing *Jenkins,* 127 F.3d at 717). The attempt to expand the scope of relief already obtained may fall under this category of distinct issues, thereby requiring success on the attempted expansion in order to obtain an entitlement to attorneys' fees for the effort. *Id.* (citing *Jenkins,* 127 F.3d at 717). For instance, a court may exercise its discretion and deny compensation for unsuccessful appellate litigation to declare unconstitutional state statutory and administrative provisions that had effectively granted plaintiffs relief, *Institutionalized Juveniles,* 758 F.2d at 909, 919–20; *see also D.R. by M.R. v. E. Brunswick Bd. of Educ.,* 109 F.3d 896, 898–900, 902 (3d Cir. 1997) (rejecting award of attorneys' fees and costs for failed attempt to set aside settlement agreement).

The Court finds that Loughlin's activities subsequent to the Final Decision are intertwined with the prior administrative proceedings and particularly the directives of the Summary Decision Order and the Final Decision. The phone calls and letters attempting to arrange P.G.'s placement at Bancroft and the communications with Bancroft staff, parents, Dr. Taylor, and defense counsel concerning P.G.'s progress are reasonable and related to efforts to implement the Final Decision's mandate for P.G.'s immediate placement at Bancroft for an adequate behavioral assessment. (Loughlin Certif. ¶ 27; Final Decision at 4.)

The bills for the January 13, 2000 and February 16, 2000 IEP meetings and re-

lated services present a more difficult question because of the apparent purpose of these meetings and the nature of an IEP meeting itself. The Court determines that these services are related to the enforcement of the Summary Decision Order and the Final Decision. (Final Decision at 4), and not distinct attempts to obtain different relief. Admittedly, Loughlin attended the January 13, 2000 meeting in order to argue for an extension of P.G.'s stay based upon the recommendation of Bancroft's staff. (Loughlin Certif. ¶ 28.) But the attempt to obtain an extension appears related to the behavioral assessment ordered by the administrative law judge. The letter written by Loughlin requesting this extension also specifically refers to the Bancroft's case manager's concern that such tasks as additional evaluation of medication and training of family and school staff were required. (December Letter ¶ 2.) These tasks appear to relate to making a proper behavioral assessment in the circumstances, and we so find. Nor has the Board presented any evidence to call this conclusion into doubt.

The February 16, 2000 IEP meeting, the February Letter, and associated items are admittedly more problematic because of their apparent focus on the content of P.G.'s post-Bancroft program. (Loughlin Certif. ¶ 29; February Letter.) Even in this case, the Court cannot conclude that these activities are factually and legally distinct from the prior administrative proceedings. In particular, the Court cannot reach such a conclusion because defendant does not address these concerns, beyond arguments, unsupported by certification or affidavit, that post-decision activities were consensual in nature and generally involved mere follow-up consultation between Loughlin and her clients. (Def.'s Br. in Opp'n at 2–3.) [7]

The Court does not reduce the award based on any lack of success in the later post-decision activities because it finds that plaintiffs achieved excellent results in the case as a whole. With the exception of the demand for the development of goals and objectives, which the plaintiffs claim they abandoned, (Pls.' Br. in Supp. at 2 n. 2), the Summary Decision Order and Final Decision gave plaintiffs everything they sought in their due process petition. (Final Decision at 4; Summary Decision Order at 6–7.) Many of the post-decision activities also appear to have been successful because P.G. was placed at Bancroft and it appears that plaintiffs obtained an extension of his stay from the original discharge date of January 17, 2000 to February 16, 2000. (See December Letter ¶ 2; February Letter ¶ 2.) Given this overall success, any possible lack of success on other post-decision activities should not result in a reduction in the amount of attorneys' fees.

■ The Court rejects the Board's next objection to any compensation for Loughlin's travel time to and from Hackensack, New Jersey. The Board questions the billing of travel time to and from Hackensack for client conferences on the grounds that defendant should not be forced to bear the expense of plaintiffs' choice of an attorney who lives and works at such a distance. (Def.'s Br. in Opp'n at 3.) But plaintiffs point out in their reply brief that this travel was not for client conferences but to attend due process hearings as well

7. The statutory prohibition against the award of attorneys' fees relating to certain IEP meetings also does not prevent an award of attorneys' fees in this case. 20 U.S.C. § 1415(i)(3)(D)(ii) provides:

Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action. . . .

The Court will not apply this provision in the absence of any argument on defendant's part for its application. It also appears that the two IEP meetings at issue were "convened as a result" of the earlier proceedings before the administrative law judge, thus satisfying the statutory exception. *See Daniel S. v. Scranton Sch. Dist.,* 230 F.3d 90 (3d Cir.2000).

as settlement and IEP conferences. (Pl.'s Reply Br. in Supp. at 1.) More importantly, the Board has failed to present any evidence challenging the reasonableness of plaintiffs' choice of Loughlin as their counsel in this matter. It is reasonable for an IDEA plaintiff to select an education law specialist from a different locality. *Muth v. Smith*, Civ. A. No. 84–2032, 1987 WL 7193, at *3 (E.D.Pa. Feb.20, 1987). Loughlin, a civil rights attorney with significant experience in special education law, appears to qualify as such an expert. (Loughlin Certif. ¶¶ 3–6.) Loughlin's prior representation in the first due process proceedings and the accompanying attorneys' fees dispute makes plaintiffs' choice even more reasonable. (Memorandum and Order at 1–5.)

■ Plaintiffs request attorneys' fees of $24,639.75 (109.51 hours at $225.00 per hour). This request includes fees for services in preparing the reply brief and other materials in defense of these motions. After examining the Second Due Process Billing Statement, the Court finds the amount of time expended by plaintiffs' counsel reasonable in light of the overall relief obtained. The Court finds that plaintiffs obtained "excellent results" in this matter. Other than the specific contentions rejected above, the Board has not disputed the number of hours reasonably expended by plaintiffs' counsel in litigating this matter.[8] Defendant has submitted no evidence that the plaintiffs unreasonably protracted the final resolution of the controversy, or that the time spent and legal services furnished were excessive, redundant, or otherwise unnecessary considering the nature of the proceeding. *See* 20 U.S.C. § 1415(i)(3)(F); *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. The Court therefore will award plaintiffs $24,639.75 in reasonable attorneys' fees.

Having calculated the amount of reasonable attorneys' fees to be awarded, the Court must next determine the amount of reasonable costs, including expert fees. As a general principle, the Supreme Court has held that a court may not shift costs beyond those found in 28 U.S.C. § 1920 without express statutory authority to do so. *E.g., W. Va. Univ. Hosps. Inc. v. Casey*, 499 U.S. 83, 86, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), *superseded by statute on other grounds as stated in, e.g., Hines v. Chrysler Corp.*, 971 F.Supp. 212 (E.D.Pa.1997). The IDEA permits an award of attorneys' fees as part of the costs to be awarded to the parents of a child with a disability who is the prevailing party, but it does not specify what falls within allowable costs. 20 U.S.C. § 1415(i)(3)(B).

Courts have awarded expenditures such as photocopying, travel, long distance telephone and postage to prevailing IDEA plaintiffs as part of their attorneys' fees award. *E.g., B.K. v. Toms River Bd. of Educ.*, 998 F.Supp. 462, 476 (D.N.J.1998); *Bailey v. District of Columbia*, 839 F.Supp. 888, 891–92 (D.D.C.1993). Such expenditures have traditionally been deemed to be part of an attorneys' fees award. *See, e.g., Abrams v. Lightolier*, 50 F.3d 1204, 1225 (3d Cir.1995).

■ From these general principles, it may be said that expenditures that have traditionally been recoverable as part of a counsel fee award are recoverable as costs under Section 1415(i)(3)(B). The costs identified as such in plaintiffs' motion are of the type specifically allowed pursuant to 28 U.S.C. § 1920,[9] such as filing fees, or

---

8. Although the Board contests a charge for a 4.65 hour telephone call on February 15, 2000 (Def.'s Br. in Opp'n at 3), plaintiffs note that this mistaken entry is corrected on the Second Due Process Billing Statement. (Pls.' Reply Br. in Supp. at 1; Second Due Process Billing Statement at 6). The Court's award of attorneys' fees reflects this correction.

9. 28 U.S.C. § 1920 provides that a judge or clerk may tax as costs:
   (1) Fees of the clerk and marshal;
   (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
   (3) Fees and disbursements for printing and witnesses;

that have traditionally been recoverable as costs under 20 U.S.C. § 1415(i)(3)(B), such as photocopying, travel, and postage expenses. (*See* Loughlin Certif. ¶ 33.) With the exception possibly of the costs incurred after September 15, 1999 and travel expenses, the Board has failed to question any of these expenses. Because the Court has rejected these specific objections, it will grant plaintiffs' request of $265.00.[10]

■ Plaintiffs also seek $1,207.50 in expert fees for the services of Dr. Taylor. (Loughlin Certif. ¶ 33.) This amount is based on 6.9 hours of work billed at $175.00 per hour. (Taylor Fee for Services Sheet.) Though a split of authority appears to exist on the issue, *Mr. J. v. Bd. of Educ.*, 98 F.Supp.2d 226, 242–43 (D.Conn.2000), courts within this Circuit, including this Court, have held that expert fees may be awarded to plaintiffs as costs under the IDEA, *e.g.*, *Arons v. N.J. State Bd. of Educ.*, 842 F.2d 58, 62–63 (3d Cir. 1988); *Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.*, No. CIV. A. 99–1830, 2000 WL 92096, at *5 (E.D.Pa. Jan.27, 2000); *B.K. v. Toms River Bd. of Educ.*, 998 F.Supp. 462, 473 n. 14 (D.N.J.1998) (Cooper, J.); *Field v. Haddonfield Bd. of Educ.*, 769 F.Supp. 1313, 1323–24 (D.N.J. 1991). To be compensable, these expert services "must have been 'necessary for the preparation of the parent or guardians [sic] case in the action or proceeding.'" *E.M. v. Millville Bd. of Educ.*, 849 F.Supp. 312, 317 (D.N.J.1994) (quoting *Field*, 769 F.Supp. at 1323 (quoting H.R. Conf. Rep. No. 99–687 at 5 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1798, 1808)). A plaintiff must also submit sufficient supporting documentation and the expert fees themselves

must be reasonable. *B.K.*, 998 F.Supp. at 473 n. 14.

■ Plaintiffs satisfactorily establish that they are entitled to an award of expert fees. It appears that Dr. Taylor's services played a significant role in the final administrative adjudication in plaintiffs' favor. Dr. Taylor testified before the administrative law judge regarding P.G.'s urgent need of a behavioral assessment and recommended P.G.'s immediate placement at Bancroft due to the availability of an immediate opening, its proximity to plaintiffs' home, its homelike setting, and the availability of convenient follow-up services. (Final Decision at 3–4.) The administrative law judge adopted Dr. Taylor's recommendation for immediate placement at Bancroft. (*Id.* at 4.) It therefore appears that Dr. Taylor's testimony actually had a pivotal role in the attainment of plaintiffs' primary relief.

Though perhaps more information could have been provided, plaintiffs submitted sufficient materials to permit this Court to order defendant to pay $1,207.50 in expert fees. Plaintiffs submitted a billing statement from Dr. Taylor indicating the time spent and the type of services provided. (Taylor Fee for Services Sheet.) For instance, the sheet indicates that Dr. Taylor spent thirty minutes preparing for her testimony with Loughlin and ninety minutes at the administrative hearing. (*Id.*) This information sufficiently describes the type of services provided and the amount of time expended, and the Court finds both to be reasonable under the circumstances.

■ Plaintiffs, however, did not furnish any affidavits concerning prevailing rates charged by experts with similar skill and

---

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

10. The Court notes that an inconsistency appears to exist between plaintiffs' brief and the certification submitted on their behalf as to the amount of costs. (*Compare* Pls.'s Br. in Supp. at 13 ($215.00), 14 ($225.00) *with* Loughlin Certif. ¶ 33 ($265.00).) Because it appears to state an amount based on the billing statement's entries (Second Due Process Billing Statement at 5–6), the Court follows the certification's request.

experience in the community. In some cases, the lack of affidavits leaves the Court with mere speculation as to the proper billing rate, precluding an award until the submission of the proper documentation. *See, e.g., S.D.*, 989 F.Supp. at 656 & n. 3. In this case, however, the Court is not forced to speculate. The rate of $175.00 in the billing statement and the total fee requested appear to this Court to be reasonable on their face. *Cf. Woodside*, 2000 WL 92096, at *5 (finding request of $1000.00 for expert fees facially reasonable). Defendant also fails to submit any evidence tending to call the reasonableness of the rate into question. In fact, defendant agreed to pay for Dr. Taylor's services under the Stipulation of Settlement at the same rate of $175.00 per hour. (Stipulation of Settlement ¶ 4.) Given these considerations and the need to avoid further litigation, the Court will exercise its discretion by awarding $1,207.50 to plaintiffs.

■ The Court will not award the $155.50 sought as compensation for the services provided by a home trainer pursuant to the Summary Decision Order. In order to constitute compensable costs, an expense must either be an expenditure traditionally awarded to prevailing IDEA plaintiffs or come under the taxed cost categories of 28 U.S.C. § 1920 [11] or its local procedural equivalent, Local Civil Rule 54.1(g).[12] *B.K.*, 998 F.Supp. at 476–77. The Court finds that the home trainer fee is not akin to such traditionally compensable expenses as photocopying because it is not directly related to the costs of litigation. It also does not fall under the categories enumerated in 28 U.S.C. § 1920 or Local Civil Rule 54.1(g). The Court therefore will not award plaintiffs any compensation for the services of the home trainer. *Cf. B.K.*, 998 F.Supp. at 476–77 (refusing to consider interest on

11. *See supra* note 9.

12. Local Civil Rule 54(g) provides for compensation for witnesses, interpreters, transcripts, the taking and transcribing of deposi-

credit card for expert expenses and mother's services as child's tutor as compensable costs).

## CONCLUSION

For the reasons expressed above, we have determined that the record demonstrates that plaintiffs are prevailing parties entitled to reasonable attorneys' fees and costs under the IDEA, 20 U.S.C. § 1415(i)(3)(B). Accordingly, we grant plaintiffs' motions for summary judgment and attorneys' fees. We award plaintiffs reasonable attorneys' fees of $24,639.75 and costs of $1,472.50, which yields a total award of $26,112.25.

tions, reasonable premiums or expenses of undertakings, bonds or security stipulations, exemplification and copying, and the preparation of visual aids.